HIGGINS, CAVANAGH & COONEY, LLP
ATTORNEYS AT LAW
THE HAY BUILDING
123 DYER STREET
PROVIDENCE, R.I. 02903-3987
401-272-3500
800-274-5299

KENNETH P. BORDEN
GERALD C. DEMARIA*
JOHN T. WALSH, JR.*
CHARLES A. HAMBLY, JR.
STEPHEN B. LANG
LAWRENCE P. MCCARTHY, III
JAMES A. RUGGIERI*
JAMES T. HORNSTEIN*
JOHN F. KELLEHER*
VIVIAN B. DOGAN*
PATRICK B. LANDERS*
PAUL S. CALLAGHAN*
SUSAN PEPIN FAY*
PETER E. GARVEY**
CHRISTINE D'ORSI FITTA
COLEEN D. O'BRIEN*
STEPHEN P. COONEY*
SAMUEL C. BODURTHA

*ALSO ADMITTED IN MA
**ALSO ADMITTED IN CT

JAMES H. HIGGINS, JR.
1952-1975

JOHN P. COONEY, JR.
1960-1981

JOSEPH V. CAVANAGH
1952-1985

FAX
401-273-8780

WEBSITE: www.hcc-law.com

June 8, 2005

Via Facsimile and
First Class Mail
877-786-5584

Mr. Matthew Bogosh, Claims Representative
Northeast Regional Claims Office
St. Paul Travelers
44 Bedford Street
P. O. Box 111
Middleboro, MA 02344-0111

Re: RI Contract No. 2002-CB-097
Washington Bridge Drill Shafts
Policy Number QTJ660-221D040A
Claim Number C2U85732
DOL: 1/1604
DOL: 4/9/04
Our file: AB 14268

Dear Mr. Bogosh:

This letter is in response to your letters of April 7, 2005 to Mr. Mainelli at Aetna Bridge Company denying coverage for the above losses and also your letter of May 18 indicating that St. Paul Travelers would review the matter. We have reviewed your letter and also the report of CCA, Inc. We have also reviewed the insurance policy. It is our belief that Travelers' denial is unjustified and in bad faith for the following reasons.

First, the report of CCA, Inc. which seeks to set the factual basis for denial, is superficial and speculative at best, insofar as it purports to analyze the "cause and origin" of these losses. It does not provide a proper basis for denial, but presents "theories" only and, specifically, does not exclude so-called "non-workmanship" issues as causative factors.

Second, after review of the coverage analysis in your letters of April 7, 2005 to Mr. Mainelli, we disagree with your conclusion that Travelers does not cover the losses submitted by Aetna Bridge Company pursuant to the installation coverage. If Travelers feels that defective workmanship was the cause then it should honor its coverage obligation and subrogate against the responsible parties. Rather than doing that, Travelers has elected the easier course by simply denying coverage. That denial is based on a misplaced analysis of its own policy.

Pursuant to Section (A) COVERAGE, the carrier agrees to pay for any "Loss" to Covered Property from any of the Covered Causes of Loss. Thus, Section (A) COVERAGE of your policy states:

> We will pay for "LOSS" to Covered Property from any of the Covered Causes of Loss.

The definition of a "Loss" is found in Section F DEFINITIONS in Paragraph 23 thereof which states:

> 23. "Loss" means accidental loss or damage.

**There can be no doubt that Aetna sustained accidental loss and resulting accidental damage on the dates in question when the drill shafts were physically damaged so as to prevent construction from going forward and require numerous repairs.**

The question then becomes whether, under Section (A) Coverage, the loss sustained falls within the "Covered Causes of Loss". In order to determine that, the insured must look to Paragraph 2 of Section A Coverage entitled Covered Causes of Loss which reads as follows:

> Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" **EXCEPT** those Causes of Loss listed in the Exclusions.

What then are the Causes of Loss listed in the Exclusions? To answer this the insured must look to Paragraph 3 of the Exclusions. Travelers' denial is specifically based on Exclusion 3h. That Exclusion reads as follows:

3. We will not pay for "Loss" caused by or resulting from any of the following. But if "Loss" by a Covered Cause of Loss results, we will pay for that resulting "Loss".

> h. Omission in, or faulty, inadequate or defective:

(2) Materials, **workmanship** or maintenance.

If the quoted language in the first sentence of Exclusion 3 were the only language contained in that Exclusion, it would be arguable that, (within the causes suppled by CCA, Inc. for the accidents) that the Exclusion might apply. That is, Travelers could argue that it had factual support for the fact that the accidents were caused by defective workmanship and that the defective workmanship exclusion applied. However, Travelers' position in this regard completely ignores the second sentence of the Exclusion. That sentence clearly manifests a contrary intention. That sentence creates a fatal caveat to the argument advanced by Travelers. That sentence states simply:

> But if "Loss" by a Covered Cause of Loss results, **we will pay for that resulting loss.**

Thus, the "resulting loss", that Travelers agreed to pay for in the second sentence of the Exclusion are all risks of DIRECT PHYSICAL LOSS referenced in Paragraph A 2 Coverage as Covered Causes of Loss.

Clearly, the Covered Causes of Loss referenced in Paragraph A 2 includes all risks of "DIRECT PHYSICAL LOSS", **except** those causes listed in Exclusion 3. The first sentence makes reference to the listed Causes a-j. However, if the loss results from DIRECT PHYSICAL LOSS by virtue of an accident, then the second sentence of Exclusion 3 takes over. At a bare minimum, their wording introduces manifest ambiguities which will be charged against Travelers.

Simply stated, the second sentence excludes all Causes listed a-j if there was a Loss, (i.e. "accidental loss or damage") resulting from any risk of DIRECT PHYSICAL LOSS. There can be no question that the damage to these drill shafts (not the steel cage as your letter erroneously points out) resulted from a cause that involved risk of DIRECT PHYSICAL LOSS. Since the second sentence of Exclusion 3, itself, excludes the Causes thereafter listed a-j then there is **no limitation** on the causes of physical loss that applies to this coverage. In other words, the second sentence eliminates Causes a-j.

In short, Aetna sustained a loss as the result of two accidents from a Covered Cause of Loss. Under Paragraph 2 of Section A, (Coverage) the Covered Causes of Loss were "DIRECT PHYSICAL LOSS". Since the second sentence of Exclusion 3 eliminates the applicability of sections a-j, the loss sustained by Aetna was clearly a "Covered Cause of Loss" that did not fall within an Exclusion.

Travelers cannot deny coverage on the basis of theories and ambiguity.

On behalf of Aetna Bridge Company your prompt response will be appreciated.

Very truly yours,

John T. Walsh, Jr.

JTW/nah