UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| AETNA BRIDGE COMPANY<br>Plaintiff | : | |
| | : | |
| VS. | : | C.A. NO. 2005-283ML |
| | : | |
| TRAVELERS INSURANCE COMPANY<br>Defendant | : | |

**FIRST AMENDED COMPLAINT AND CLAIM FOR JURY TRIAL**

**Parties**

1. Plaintiff (hereinafter "Plaintiff" or "Aetna") is a corporation duly authorized pursuant to the laws of the State of Rhode Island with its principal place of business at 30 Lockbridge Street, Pawtucket, Rhode Island.

2. Defendant (hereinafter "Defendant" or "Travelers") is an insurance company duly licensed to do business in the State of Rhode Island which is domiciled in the State of Connecticut with its principal place of business in Hartford, Connecticut.

3. The amount in controversy exceeds the sum of $75,000.

**Jurisdiction and Venue**

4. Jurisdiction arises pursuant to 28 U.S.C. §1332 in that the parties are dominciliaries of different states and the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs.

5. Venue in United States District Court for Rhode Island is proper pursuant to 28 U.S.C. §1391.

## Facts

### The Project

6. On or about January 24, 2003, plaintiff, Aetna Bridge Company entered into a contract with the Rhode Island Department of Transportation ("RIDOT"), designated Rhode Island Contract Number 2002-CB-097 to provide foundations for a bridge between the cities of Providence and East Providence, known as the Washington Bridge. As the general contractor, Aetna then entered into a subcontract agreement with Jac-Lyn Steel, Inc. on December 10, 2003 to perform a specified scope of work, namely, to furnish and install epoxy-coated reinforcing steel cages into pre-drilled shafts that had been drilled into the bedrock by a second Aetna subcontractor, New England Foundation Company ("NEFCO"). The reinforcing steel was needed to support concrete foundation piers which serve as footings for the new Washington Bridge.

### The Insurance Coverage

7. For its own protection against various potential casualty losses and risks of loss, Aetna, as general contractor, purchased a Commercial Insurance Package Policy from defendant, specifically Policy No. DT-CO 463D3267-IND-03 with effective policy dates from December 31, 2003 through December 31, 2004 which included (1) Commercial General Liability - Contractor's Coverage, Section A, and also (2) Commercial Inland Marine Coverage, which included coverage for "Installation" which provided first party protection for the general contractor in the event an

accident occurred during installation of various structural components of the Washington Bridge. A copy of the Commercial General Liability Contractor's coverage is attached hereto as ***Exhibit 1***. A copy of the Commercial Inland Marine coverage is attached as ***Exhibit 2***.

**The Accidents**

8. On two separate work dates within the policy period, namely, January 16, 2004 and April 9, 2004, accidents occurred during installation of the steel reinforcing cages into the pre-drilled drilled shafts while plaintiff's sub-contractor, Jac-Lyn Steel, Inc., was performing the installation of the steel reinforcing cages. On January 16, 2004 an accident occurred at Drill Shaft 1. On April 9, 2004 an accident occurred at Drill Shaft 7. Each of these accidents resulted in property damage to the drill shafts causing "resulting damage" from a DIRECT PHYSICAL LOSS that was covered pursuant to the general liability provisions of the policy, and also was covered, pursuant to the Commercial Inland Marine portions providing first party "Installation" Coverage.

9. Following each accident, plaintiff made a timely report of each accident and facts to its insurance agent, the J. Barry Driscoll Insurance Agency, 600 Longwater Drive, P. O. Box 9120, Norwell, Massachusetts. At that time the Driscoll agency operated under an agency contract with Travelers and was Travelers' Agent for all purposes in dealing with plaintiff and also plaintiff's agent for purposes of reporting the accidents and for presentation of any claims to Travelers. As

Travelers' Agent, the Driscoll Agency was also responsible to identify all potential sources of insurance coverage for the accidents that were reported by plaintiff. In that regard, the Driscoll Agency was responsible for advocating its insured's position with respect to any coverage issue to Travelers, and, further, responsible for advising its insured, Aetna, as to all sources of first party insurance coverage that might be available to Aetna under the terms of the policy issued to Aetna.

**Denial of Liability Coverage**

10. After making a timely report of the January 16, 2004 accident, the defendant, Travelers, conducted no further investigation of the accident and sought no further information from plaintiff, either directly or by and through their agent, the J. Barry Driscoll Insurance Agency. Nevertheless, on March 17, 2004, defendant Travelers forwarded a letter declining to provide liability insurance coverage for Aetna for the January 16 incident. A copy of the declination letter is attached as ***Exhibit 3.***

11. On March 18, 2004, Aetna's agent, the J. Barry Driscoll Insurance Agency, by and through Dennis Driscoll, sent an e-mail to Darlene Kelly ***(Exhibit 4)*** protesting Traveler's action in issuing the declination letter of March 17, 2004. Mr. Driscoll stated:

> I left a message for Laurie Hanson (of Travelers Insurance Company) this afternoon saying I hope this letter (the March 17, 2004 denial of coverage letter) has not been sent out to Mark Mainelli. I think she has gone too far in addressing this situation in her formal declination to Mark. We know Aetna

> Bridge called this in for reporting purposes only. Aetna is not looking for Travelers to pay this claim nor do they want to hear Travelers stated position on duty to defend. Hassan is out until Monday, I also left a message for Mark Mainelli to help explain the situation. We can discuss tomorrow.

12. Contrary to the content of the e-mail, Aetna was not reporting this loss to its agent solely for "reporting purposes only". Aetna reported the loss to its insurance agent in the full expectation that its agent would do everything possible on Aetna's behalf to insure that it was protected in every way possible pursuant to the terms of its insurance coverage. Aetna, by and through Hugo Mainelli, Jr. made its position clear to the Driscoll Agency. However, following the initial reporting of these accidents by Aetna to the Driscoll Agency, the Driscoll Agency, as Travelers' Agent, repeatedly urged Aetna to pursue all remedies by instituting a claim against Jac-Lyn Steel, Inc., Aetna's subcontractor. [See ***Exhibit 5*** - letter of July 20, 2004 from Jean Livingston of the Driscoll Agency to Aetna's attorney in which she undertook to direct counsel how to best make claim against Jac-Lyn Steel, Inc. and its carrier, One Beacon. See also letter August 12, 2004 **(Exhibit 6)** from Jean Livingstone of the Driscoll Agency to counsel urging "Suit needs to be filed against Jac-Lyn Steel or the manufacturer of the steel cage." and stating other advices designed to induce Aetna to seek sole recovery against entities other than Travelers at Aetna's own expense for conduct of the litigation.]

13. Upon receipt of notification of the January 16, 2004 accident and again when the notice of the second April 9, 2004 accident was received, the J. Barry Driscoll

Insurance Agency, as Travelers' agent, was knowledgeable with respect to the coverages purchased by Aetna, and, was charged with an affirmative duty to immediately notify Aetna that a substantial portion of the losses that Aetna had sustained as a result of these accidents was covered pursuant to the Installation Coverages that had been purchased by Aetna and that Aetna should submit claims to Travelers for those losses under the Installation Coverage. [Thereby allowing Travelers at its own expense to pursue recovery against Jac-Lyn Steel, Inc. as Aetna's subrogee after payment to Aetna.]

14. As Aetna's agent, the Driscoll Agency failed to disclose to Aetna coverage benefits under its Installation Coverage protection that would enable Aetna to pursue a claim for its damages for the accidents of January 16, 2004 and April 9, 2004. Aetna was not fully aware of what insurance benefits were available under the complex insurance policy that it had purchased from Travelers through the Driscoll Agency. Aetna only learned of the availability of Installation Coverage benefits at a later date, when it consulted an outside insurance expert regarding its rights under the Travelers' insurance policy.

15. Although the facts involving the accident of January 16 were complex, and involved property damage to the foundation drill shafts prepared by another subcontractor, NEFCO, (who had excavated and installed all the drill shafts), Travelers conducted no investigation as to the cause and origin of the accident prior to declining liability coverage on March 17, 2004. Consequently, Travelers

was not in a position to make a judgment as to whether the possible policy exclusions, enumerated in the March 17, 2004 letter denying coverage, would have application. At that time it could not properly evaluate the engineering significance of the facts, nor could it evaluate what contractors or subcontractors had suffered damage nor could it evaluate the nature of the damages suffered as a result of the accident.

16. In mid-August, 2004 when Aetna requested an independent consultant to review its insurance policies, the consultant advised Aetna that it had coverage for the losses of January 16, 2004 (Drill Shaft 1) and April 9, 2004 (Drill Shaft 7) pursuant to the Installation Coverage provisions of its policy. Having never been made aware of this coverage by Travelers or by its agent, the J. Barry Driscoll Insurance Agency, Aetna, by and through its President, Hugo R. Mainelli, Jr., immediately made inquiry of the Driscoll Agency regarding Installation Coverage. He was told that the Agency would look into the possibility of first party coverage for Aetna's losses.

17. Thereafter, by letter dated August 19, 2004, ***(Exhibit 7)*** Aetna, through counsel, requested that Travelers undertake a review of its premature decision to deny liability coverage outright. The letter stated in part:

> It is virtually impossible within the time frame prior to March 17, 2004 that you could have investigated these facts sufficiently and/or obtained the necessary professional opinions to decline coverage. Your obligation to defend and indemnify Aetna is not fixed until such time as a complaint,

> cross claim or a counterclaim or third party complaint has been filed against your insured and the allegations made are reviewed in the light of whether those allegations could fall within the coverages provided. If a coverage question arises, Rhode Island law requires the carrier to defend the insured and retain other counsel to seek a separate ruling.

However, on August 26, 2004 Travelers reaffirmed its denial of coverage for the January 16, 2004 incident (previously denied on March 17, 2004). Between the time that it originally denied liability coverage on January 16, 2004 and the time that it reaffirmed that denial, more than five months later, Travelers had not completed any investigation as to the cause and origin of the accidents occurring January 16, 2004 and April 9, 2004.

18. Prior to the August 26th reaffirmation of the coverage denial by Travelers, Aetna, by and through its employees, Hugo R. Mainelli, Jr., Hugo R. Mainelli, III and Gregory Maurer had several discussions with representatives of the J. Barry Driscoll Insurance Agency, including Dennis Driscoll, Jean Livingston and Leila Baier, in which Aetna requested that the Driscoll Agency forcefully, and in writing, demand that Travelers reverse its denial of liability coverage. On September 1, 2004, Leila Baier, of the Driscoll Agency, forwarded a letter to Hugo R. Mainelli, III ***(Exhibit 8)*** referencing only the January 16, 2004 accident which stated in part:

> Last week I requested that St. Paul Travelers rescind their coverage decision **and proceed with the investigation of this claim** (under a Reservation of Rights). I also requested that St. Paul Travelers reimburse Aetna Bridge for the forensic

> engineering expenses (Aetna had retained outside engineering services to investigate the accident). [Emphasis added]

The letter continued:

> St. Paul Travelers advised via their August 26, 2004 letter, (copy enclosed for your reference) that they respectfully declined to rescind the declination of coverage letter previously issued and they also declined to reimburse Aetna Bridge for any forensic engineering expenses including the investigation of this matter.
>
> In response I spoke with St. Pauls Travelers Manager Chad Davidson, and appealed the August 26, 2004 letter. He advised that St. Pauls Travelers stands by their coverage decision.
>
> I have also been asked to secure a copy of Travelers coverage counsel written opinion with respect to this claim. Please be advised that St. Pauls Travelers did not use coverage counsel for the coverage decision on this claim.

19. The September 1, 2004 letter did not mention the April 9, 2004 accident. Thus, Travelers' agent, in the letter of September 1, 2004 confirmed the fact that eight months had elapsed since the January 16, 2004 accident at Drill Shaft 1 and Travelers had not conducted any investigation nor had they secured a legal opinion as a basis for their outright denial of coverage on March 17, 2004, nor had they acknowledged receipt of the April 9, 2004 accident report..

20. Defendant's premature and illegal denial of the benefits of the general liability coverage which Aetna had purchased immediately exposed Aetna to serious possible financial consequences as the result of physical damage and loss of use of Drill Shaft 1 and Drill Shaft 7 respectively by New England Foundation Co., Inc.,

("NEFCO"), the subcontractor that had engineered and constructed the drill shafts. As the result of the damage to Drill Shaft 1 on January 16, 2004, and the resulting loss of use thereof by NEFCO, and, further, the additional damage to Drill Shaft 7 on April 9, 2004, and, the resulting loss of use thereof by NEFCO, NEFCO had forwarded claims to Aetna alleging serious financial losses. By letter dated June 15, 2004 (**Exhibit 9**), NEFCO put Aetna on notice of its claim against Aetna in the amount of $132,044. Moreover, on July 2, 2004, (**Exhibit 10**) NEFCO submitted a second claim to Aetna in the amount of $239,937 for damage sustained and loss of use at Drill Shaft 1. Aetna, in turn, provided notice of these claims to Travelers. Travelers was aware of the claimed liability by NEFCO against Aetna at the time Travelers reaffirmed its denial of liability coverage on August 26, 2004. Travelers was aware of the fact that such denial would expose its insured, Aetna, to severe economic loss. Thus, Travelers was aware of the claimed indemnity by NEFCO against Aetna at the time Travelers reaffirmed its denial of liability coverage on August 26, 2004.

21. In the face of Travelers' conduct and that of its agent, Travelers either directly, or by and through its agent, had: (1) erroneously denied Aetna's claim for liability for the accident of January 16, 2004, (2) failed to disclose the existence of Installation Coverage available to plaintiff, (3) failed to conduct any meaningful investigation of the accidents of January 16 and April 9, 2004, (4) failed to acknowledge receipt of notice of the accident of April 9, 2004, and (5) completely

failed to relate any coverage decision to the facts of either accidents. Because of these failures Aetna had no basis to determine what facts Travelers was relying upon in declining coverage. As a result of this conduct, Aetna, through counsel, forwarded a letter to Travelers on September 1, 2004, ***(Exhibit 11)*** placing Travelers on notice that its conduct was in bad faith and requesting that the coverage denial be reversed and rectified.

22. Shortly thereafter, a Traveler's employee, Stephen Reardon, (who had never previously been identified to Aetna in any way), called Mark Mainelli on September 27, 2004 stating that he had questions regarding the "drill shaft claims". He stated that he was not sure "which shaft the accident happened on or on what date the "incident" happened. He referred to only one accident, namely, January 16, 2004. Mr. Mainelli expressed surprise to Mr. Reardon that Travelers was only now calling for information since both incidents had been reported through the Driscoll Agency months prior. Reardon advised Mainelli there had been late reporting by the Driscoll Agency. In that conversation Reardon was advised by Mainelli to call Greg Maurer, Aetna's Construction Manager, to try to answer his questions about both accidents.

23. After further consideration of Travelers' outright denial of liability coverage, Aetna forwarded a letter to Mr. Reardon dated October 13, 2004, ***(Exhibit 12)*** regarding Mr. Reardon's recent request that Aetna employees cooperate in a belated investigation of the facts. The letter to Mr. Reardon stated in part:

> Until such time as St. Paul Travelers makes a decision to rescind its prior outright declination of coverage, it is pointless for St. Paul Travelers to seek to interview any employees of its insured, Aetna Bridge Company. There is absolutely no basis for St. Paul Travelers to request this in the face of its letters denying coverage.

24. Shortly thereafter, on October 27, 2004, Dennis Driscoll, principal of Travelers Agent, the J. Barry Driscoll Agency, made an appointment with Hugo R. Mainelli, Jr., Aetna President, to come to the offices of Aetna Bridge Company in Pawtucket, Rhode Island to discuss Aetna's demands for full coverage. Mr. Driscoll stated that his purpose was to discuss the drilled shaft claims.

25. In the course of that conversation Mr. Mainelli brought up the fact that an earlier consultation with Aetna's own insurance consultant had revealed the possibility of reimbursement to Aetna pursuant its first party Installation Coverage. In response, Mr. Driscoll agreed that Aetna should submit its claims for the January 16, 2004 and April 9, 2004 accidents to the Driscoll Agency pursuant to the Installation Coverage. He also urged Mr. Mainelli to allow Travelers' investigator to conduct a cause and origin investigation. He indicated that Travelers would personally select the investigator and urged Mr. Mainelli to cooperate with the outside investigative agency and encourage Aetna employees to speak directly to its representatives. He indicated that this would be necessary to enable Travelers to secure sufficient information regarding the cause and origin of the accidents and would provide a basis for recovery from Travelers pursuant to the Installation

Coverage.

26. Shortly thereafter, on November 8, 2004, Travelers forwarded two separate letters, one from Matthew Bogosh relating to the January 16, 2004 loss, and a separate letter from Karen Enos relating to the April 9, 2004 loss. In each letter Travelers requested that Aetna cooperate with CCA, LLC. to enable Travelers to properly investigate the claims. In both letters, Travelers, while not reiterating its prior denial of coverage, nevertheless advised that any investigation would be conducted under a "full reservation of rights". (**Exhibit 13**). Thereafter, on December 7, 2004, (**Exhibit 14**) Matthew Bogosh of Travelers again wrote to Aetna emphasizing the importance of allowing Travelers to conduct its investigation which was now almost one year after the January 16, 2004 accident. Mr. Bogosh stated in part:

> Until the above investigation is completed, we are unable to determine coverage as it relates to the first party Commercial Property policy for either of the above-captioned claims.

Again, Mr. Bogosh stressed that the investigation would be conducted under a full reservation of rights.

27. On January 11, 2005, almost one year after the first accident, employees of Aetna Bridge Company familiar with the accidents of January 16, 2004 at Drill Shaft 1 and April 9, 2004 at Drill Shaft 7, met with representatives of CCA, LLC. for the first time, the purpose of informing CCA, LLC. as to the cause and origin of the respective accidents and, also, to inform the investigators as to the damages

sustained by Aetna as a result of the DIRECT PHYSICAL LOSS connected with the respective accidents.

**The Installation Coverage Claims**

28. Upon learning of the possibility of recovery under the Installation Coverage from its consultant, and following the subsequent discussion of Installation Coverage with Mr. Driscoll on October 27, 2004, Aetna, prepared a summary of its losses that would fall within the Installation Coverage as described by its insurance consultant. On January 20, 2005, Aetna submitted separate claims under the Installation Coverage to Travelers. With respect to the accident of January 16, 2004, at Drill Shaft 1, Aetna submitted a claim in the amount of $292,117.88 with appropriate backup. ***(Exhibit 15)*** On that same date it submitted a claim for the incident of April 9, 2004 at Drill Shaft 7 in the total amount of $225,966.66. ***(Exhibit 16)*** Aetna asserts that those itemizations of damage are fair and reasonable and fall within the coverages provided by the policy issued to Aetna by defendants.

**Denial of Installation and Liability Coverage**

29. On April 7, 2005, Matthew Bogosh of Travelers forwarded a letter **(Exhibit 17)** to Aetna denying coverage pursuant to the Installation Coverage of its policy. In that letter Bogosh stated erroneously:

> that you have submitted a claim for **damage to a steel cage** at DS1. Our investigation with the assistance of CCA, Inc. reveals that the bottom section of the steel cage collapsed

> after being temporarily secured at the job site." [Emphasis added]

In fact, Aetna had made no claim for damage to the steel cage which it did not own. Aetna was seeking payment for the damages which it sustained as a result of the steel cage being dropped on the property of other subcontractor(s) causing Aetna severe resulting loss. In addition, the Bogosh letter erroneously relied on superficial facts and conclusions reported to it by its investigator, CCA, Inc. and, further, erroneously interpreted its own insurance policy to its own benefit.

30. On April 7, 2005, Matthew Bogosh also wrote a second letter (**Exhibit 18**) to Aetna with reference to the April 9, 2004 claim. Again, the purpose was to deny coverage pursuant to the Installation provisions of the policy. In the letter Mr. Bogosh erroneously stated:

> You have submitted a claim for **damage to a steel cage** at (DS)7. Our investigation with the assistance of CCA, Inc. reveals that a steel cage was damaged when cables holding the cage slipped through the brackets that were not property tightened. As a result the cage fell and was damaged. [Emphasis added]

Again, Mr. Bogosh's conclusion that Aetna presented a claim for damage to a steel cage was erroneous. In addition, the Bogosh letter erroneously relied on superficial facts and conclusions reported to it by CCA, Inc. and, further, erroneously interpreted its own insurance policy to its own benefit.

31. On April 25, 2005, Aetna, by and through counsel, responded to Travelers' April 7, 2005 letters denying payment pursuant to the Installation Coverage provisions

for the respective losses of January 16, 2004 (**Exhibit 19**) and April 9, 2004 (**Exhibit 20**). In those letters counsel pointed out that Travelers misconceived the nature of the claims submitted by Aetna and, further, were in error as to the application of Exclusion 3. Aetna requested a re-review of the claims it had submitted. The letters requested in part:

> At the very least, Travelers must articulate its reasoning.

32. On May 18, 2005, Matthew Bogosh responded to counsel's letter by indicating that the insurer would again review its decisions declining Installation Coverage and advise. (**Exhibit 21**)

33. By June 8, 2005, however, no written review of Travelers' coverage decision with respect to the Installation claims had been received by Aetna. Consequently, on that date counsel again forwarded a letter, (**Exhibit 22**) setting forth in detail the reasons why Travelers' denial Installation claims was ill-considered. To date, Travelers has not responded to Aetna with a detailed analysis with respect to the Installation Coverage. Moreover, at present, Travelers has not responded to Aetna as to the facts relied upon by Travelers in its denial of liability coverage to its insured.

## Count I

## Breach of Contract

34. Defendant's initial denial of liability coverage and its subsequent refusal to make payment pursuant to the Installation Coverage are breaches of the insurance

contract and defendant is liable to plaintiff for all covered damages sustained as a result of the accidental losses which occurred on January 16, 2004 and April 9, 2004, respectively.

WHEREFORE, Plaintiff demands judgment for its contract damages pursuant to the terms of the insurance policy together with interest, costs and attorney's fees.

**Count II**

**Bad Faith**

35. Plaintiff reincorporates allegations set forth in Paragraphs 1-31 above.

36. Pursuant to the provisions of R.I.G.L. 9-1-33 the defendant has engaged in bad faith conduct which includes but is not limited to the following:

a. failing to timely perform a cause and origin investigation to determine its obligation to provide liability coverage and its further obligation to provide payment pursuant to the Installation provisions of the contract;

b. Prematurely denying liability coverage at a time when it had insufficient facts to make such denial;

c. Recklessly refusing to provide Aetna with liability coverage for claims submitted by NEFCO as a result of the accidents of January 16, 2004 (Drill Shaft 1) and April 9, 2004 (Drill Shaft 7).

d. Failure to provide an adequate factual basis for the denial of liability coverage. Travelers' denial letter of March 17, 2004 did nothing but quote policy provisions without stating what particular facts supported the conclusion that any quoted provision was applicable;

e. By and through its agent, repeatedly attempting to convince plaintiff to seek its sole remedy for recovery for its losses by presenting a claim and a subsequent lawsuit against Jac-Lyn Steel, Inc., (thereby transferring to Aetna all of the risks of litigation and all the expense for expert testimony, attorney fees, court costs and the man-hours necessary to present the case). At the time, Travelers and its agent were aware that Aetna's policy provided Installation Coverage which required Travelers to make payment for any of those damages on a first policy basis thereby eliminating the costs associated with commencing litigation against Jac-Lyn Steel, Inc. At the time, Travelers and its agent knew that once payment had been made, Travelers was free to subrogate against Jac-Lyn Steel, Inc. to recover all amounts paid to Aetna;

f. failed, through its agent, the J. Barry Driscoll Agency, to make a timely report of the April 9, 2004 loss to Travelers;

g. failed to timely perform its obligations pursuant to the insurance policy;

h. failed to make payment on the Installation claim in accordance with its obligation pursuant to the insurance policy;

i. failed to give assurances to Aetna that it would stand behind Aetna and defend and indemnify Aetna against any claim of any third party resulting from either of the accidents;

j. failed to understand the nature of the damages being claimed by Aetna and wrote letters to Aetna denying coverage in which it demonstrated its lack of

knowledge of the essential facts.

WHEREFORE, pursuant to the provisions of R.I.G.L. §9-1-33, Plaintiff demands compensatory damages, punitive damages and reasonable attorney's fees, together with interest and costs of this action.

**Count III**

**Declaratory Judgment**

37. Plaintiff reincorporates allegations set forth in Paragraphs 1-34 above.

38. Pursuant to the provisions of Rule 57 of the Federal Rules of Civil Procedure, plaintiff seeks a declaratory judgment declaring the following:

a. That the defendant is legally required to defend and indemnify Aetna Bridge Company against any claims of third parties for compensation or damage from Aetna as a result of damages sustained by any third party as the result of the accidental losses occurring on January 16, 2004 and April 9, 2004;

b. Defendant is legally required to make payment to plaintiff pursuant to the Installation Coverage provisions of its policy in the amount of $518,084.54, interest and costs thereon;

c. An award of reasonable attorney's fees incurred by plaintiff in enforcing the terms of the insurance policy; and

d. Such other relief as the Court may deem just in the circumstances.

WHEREFORE, Plaintiff demands declaratory judgment together with the costs of this action and attorney's fees.

**Count IV**

In addition to damages for bad faith, plaintiff requests the award of counsel fees pursuant to the provisions of R.I.G.L. §9-1-45.

WHEREFORE, pursuant to R.I.G.L. §9-1-45(1), as amended, plaintiff seeks an award of counsel fees based on a finding that a complete absence of a justiciable issue of law or fact raised by the defendants.

**Plaintiff demands trial by jury.**

Plaintiff,
AETNA BRIDGE COMPANY
By Its Attorneys,

John T. Walsh, Jr., (#0483)
HIGGINS, CAVANAGH & COONEY, LLP
123 Dyer Street
Providence, RI 02903
(401) 272-3500 (Phone)
(401) 273-8780 (Facsimile)

Dated: